STATE of Utah, Plaintiff and Appellee,

v.

Jeffery Earl SOUTH and Dianna South, Defendants and Appellants.

No. 930362–CA.

Court of Appeals of Utah.

Jan. 30, 1997.

Kathryn D. Kendell, American Civil Liberties Union of Utah Foundation, Inc., Salt Lake City, and Nathan Hult, Logan, for Defendants and Appellants.

Jan Graham, Attorney General, and Todd A. Utzinger, Assistant Attorney, Salt Lake City, and Gary O. McKean, Cache County Attorney, Jeffrey "R" Burbank and Patrick B. Nolan, Cache Deputy County Attorneys, Logan, for Plaintiff and Appellee.

Before DAVIS, P.J., and BENCH and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

The State seeks affirmance of the convictions of Jeffery Earl and Dianna South of possession of a controlled substance within 1000 feet of a church, and possession of drug paraphernalia, class A misdemeanors, in violation of Utah Code Ann. §§ 58–37–8 and 58–37a–5 (1994), on the ground that the trial court erred in concluding the search of the Souths' home exceeded the scope of the search warrant. The trial court determined that the search executed exceeded the warrant's scope because the warrant permitted only a search of "the person of Jeffery and Dianna South," and not a search of their personal residence. However, the trial court upheld the search on other grounds. Defendants challenge the trial court's imposition of an enhanced sentence. We affirm the convictions, but reverse and remand in regard to the sentence enhancements.

## BACKGROUND

This case is before us on remand from the Utah Supreme Court. *State v. South,* 924 P.2d 354, 357 (Utah 1996). The criminal charges against the Souths arose out of a search warrant executed on March 15, 1992, by Detective Dennis Simonson of the Logan City Police Department. Initially, Detective Simonson visited defendants' personal residence to investigate the reported theft of a cellular phone. Upon arrival, Detective Simonson smelled a heavy odor of burnt marijuana emanating from defendants' home and from Jeffery South's clothing.

Detective Simonson proceeded to obtain a search warrant, which authorized a search of "the persons of Jeffery Earl and Dianna South." The search warrant specifically referenced a supporting affidavit that explicitly referenced a search of defendants' personal residence. Detective Simonson served the search warrant upon defendants and with the assistance of several other officers, commenced a search of the South residence. The officers found controlled substances and drug paraphernalia.

Defendants were subsequently charged with possession of a controlled substance and possession of drug paraphernalia within 1000 feet of a church. Prior to trial, defendants moved to suppress the evidence found in their residence, claiming it was seized in an illegal search and seizure. Defendants as-

serted that the search warrant was defective because it authorized only a search of the "persons of Jeffery Earl and Dianna South," and not of their personal residence. In denying defendants' motion to suppress, the trial court ruled that although the search warrant was defective, the evidence was admissible under the plain smell doctrine.[1]

Defendants were adjudged guilty of possession of a controlled substance and possession of drug paraphernalia. At sentencing, the trial court determined that the possession of a controlled substance offense was committed within 1000 feet of a church, in this instance, the Logan Temple of the Church of Jesus Christ of Latter-day Saints. Defendants then appealed to this court.

We declined to apply the plain smell doctrine to personal residences and determined that a warrant was required to search defendants' home and that exigent circumstances for a warrantless search were not present. *State v. South,* 885 P.2d 795, 799–800 (Utah App.1994). We further declined to address the State's alternative ground for affirmance, scope of the search warrant, because the State had failed to cross-appeal this issue, and reversed defendants' convictions. *Id.* at 798.

The State then petitioned for and was granted a writ of certiorari by the Utah Supreme Court. *See State v. South,* 924 P.2d 354 (Utah 1996). The supreme court held that even though the State did not cross-appeal the validity of the search, this court should have considered that alternative ground for affirmance of the convictions below, which the State had argued in its brief to this court.[2] The supreme court remanded the case to this court to determine the lawfulness of the search under the warrant.

## STANDARD OF REVIEW

We review for correctness the trial court's legal conclusions on motions to suppress.

*See State v. Pena,* 869 P.2d 932, 939 (Utah 1994). We will overturn the trial court's underlying factual findings only if those findings are clearly erroneous. *Id.* at 939 n. 4.

## ANALYSIS

### I.   Validity of Search Executed

■ A search warrant must *"particularly* describe[ ] the person or *place* to be searched and the person, property, or evidence to be seized." Utah Code Ann. § 77–23–203 (1995) (emphasis added).[3] The particularity requirement is satisfied " 'if the description is such that the officer with a search warrant can *with reasonable effort* ascertain and identify the place intended.' " *State v. Anderson,* 701 P.2d 1099, 1102 (Utah 1985) (quoting *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925)). This reading of the particularity requirement protects two concerns. First, it promotes the deterrence of " 'general, exploratory rummaging in a person's belongings.' " *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971)). Second, the scope of the lawful search is limited to " 'the places in which there is probable cause to believe that it [the evidence] may be found.' " *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987) (quoting *United States v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982)).

Utah courts have held that technical deficiencies in a search warrant's description of the place to be searched do not necessarily invalidate the warrant. *E.g., State v. Kelly,* 718 P.2d 385, 392 (Utah 1986) (holding warrant and search valid where one of number of warrants contained incorrect street number because correct address appeared on attached affidavit as well as other related war-

---

1.  *See, e.g., State v. Naisbitt,* 827 P.2d 969, 972 (Utah App.1992) (upholding warrantless search of vehicle where plain smell of marijuana gave officers probable cause).

2.  The supreme court did not address the applicability of the plain smell doctrine to personal residences.

3.  The current version of this section is substantially the same as that in effect at the time this issue arose. The 1994 amendment, effective May 2, 1994, made merely minor stylistic changes.

rants and affidavits); *Anderson*, 701 P.2d at 1103; *State v. McIntire*, 768 P.2d 970, 972–73 (Utah App.1989) (holding affidavit clarified ambiguity that both residence and blue trailer, not just residence, as described in search warrant, were proper subjects of search). In *Anderson*, an informant told a police officer that defendant's property contained a fenced area used for cultivating marijuana. 701 P.2d at 1100. The officer obtained a search warrant that authorized the search of defendant's "residence." *Id.* The warrant, however, made no reference to the fenced enclosure, which was located about 100 feet north of defendant's house. *Id.* at 1100, 1102. In executing the search warrant, the police searched only the enclosed area, where they discovered over 100 marijuana plants. *Id.* at 1100. Defendant argued that the search exceeded the warrant's scope. *Id.* at 1102.

In considering the warrant's scope, the supreme court emphasized that the warrant specifically referred to the affidavit in support of the petition for a warrant. *Id.* The affidavit clearly showed that the officer had probable cause to search the enclosed area, and that he had requested a warrant to search that specific area. *Id.* at 1102–03. Finally, the affiant was the very officer who executed the search warrant. *Id.* at 1103. Relying on case law that also considered these factors, the court concluded:

> We find this logic persuasive because it limits the search to the confines contemplated by the magistrate authorizing the warrant, while not invalidating searches because of *minor technical deficiencies in the warrant's description.* Because the area searched (the enclosure) was the area for which probable cause had been made out, and the affidavit adequately identified that area, the search was valid.

*Id.* (emphasis added).

In this case, a clerical error resulted in the omission of defendants' home from the warrant's description. Defendants argue that this omission is more than a mere technical deficiency. Defendants' argument is unpersuasive, however, as this court has, relying on *Anderson*, upheld the search of a house and trailer where the warrant omitted any reference to the house itself. *McIntire*, 768

P.2d at 972–73 (relying on supporting affidavit to clarify proper scope of search); *see also State v. Kleinberg*, 228 Neb. 128, 421 N.W.2d 450, 451–55 (1988) (relying on supporting affidavit to uphold search despite warrant's inadvertent identification of defendant, rather than defendant's automobile, as subject of search).

The evidence in this case demonstrates that the officers executing the warrant "were able to identify the area to be searched with reasonable effort." *McIntire*, 768 P.2d at 973. The warrant specifically referred to and incorporated Detective Simonson's affidavit, which was submitted to and signed by the judge issuing the warrant. In particular, the warrant stated that probable cause to search was "more fully set forth in the affidavit, a copy of which is attached hereto and incorporated herewith." Although the record suggests that, at the time of the search, the affidavit was not attached to the warrant, *McIntire* requires only that the warrant specifically refer to the affidavit. *Id.; see also United States v. Jones*, 54 F.3d 1285, 1291 (7th Cir.) (upholding warrant "when an affidavit attached to the warrant or incorporated into it provides the necessary specificity"), *cert. denied,* —— U.S. ——, 116 S.Ct. 263, 133 L.Ed.2d 186 (1995); *People v. Papez*, 652 P.2d 619, 622 (Colo.App.1982) (stating federal constitution does not require attachment of affidavit).

Furthermore, the affidavit clearly stated that Detective Simonson had probable cause to suspect the presence of controlled substances "at the premises of 237 East 200 North, Logan, Utah," defendants' address. Based on this probable cause, the affidavit specifically supported a warrant to search defendants' home. Therefore, in signing the affidavit and search warrant, the magistrate must have determined that Detective Simonson had probable cause for the search of defendants' home. *See Anderson*, 701 P.2d at 1102; *McIntire*, 768 P.2d at 972–73; *see also United States v. Young*, 745 F.2d 733, 759 (2d Cir.1984) (stating that one objective of particularity requirement is to prevent "seizure of objects upon the mistaken assumption that they fall within the magistrate's authorization"), *cert. denied,* 470 U.S.

1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); 2 Wayne R. LaFave, *Search & Seizure* § 4.5, at 513 (3d ed.1996) (noting that particularity requirement reduces risk that police will "search a place other than the place intended by the magistrate"). The probable cause in this case was "particularized" to include not only defendants' person, but also their home. *Cf. State v. Ayala,* 762 P.2d 1107, 1111 (Utah App.1988), *cert. denied,* 773 P.2d 45 (Utah 1989).

In addition, because the officers limited their search to defendants' person and home, as contemplated by the search warrant and supporting affidavit, their search did not exceed the magistrate's authorization. *See Anderson,* 701 P.2d at 1102. Therefore, "the area searched ... was the area for which probable cause had been made out." *Id.* at 1103; *see also State v. Nicholson,* 174 Wis.2d 542, 497 N.W.2d 791, 794 (Ct.App.1993) (upholding search as "tailored to the justification offered in the warrant" where search "focused on [defendant's] apartment, the very premises which the officers sought judicial permission to search").

Finally, Detective Simonson, the affiant in this case, was among the officers who executed the warrant. Detective Simonson had acquired probable cause, prepared the affidavit, submitted the affidavit to the judge for issuance of the warrant, and executed the warrant. *See Anderson,* 701 P.2d at 1102–03; *McIntire,* 768 P.2d at 972–73; *see also United States v. Gahagan,* 865 F.2d 1490, 1499 (6th Cir.) (upholding search because "affiant who describe[d] the property to the judge" was among executing officers), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 590 (1989); *State v. Pruitt,* 97 Ohio App.3d 258, 646 N.E.2d 547, 550 (1994) (upholding search where same officer "both applied for and executed the warrant, thus rendering a mistaken search unlikely").

Defendants contend, however, that any other officer besides the affiant could not have ascertained with reasonable effort that defendants' home was subject to the warrant. Defendants fail to recognize that the warrant expressly incorporated the affidavit, in which Detective Simonson had clearly established probable cause and requested a warrant to search defendants' home. Thus, with reasonable effort, any other officer could have determined through reviewing the supporting documents that defendants' home was subject to the warrant. *Cf. Buckner v. United States,* 615 A.2d 1154, 1156 (D.C.App.1992) (relying on facts not specified in either warrant or affidavit, but known to officers executing warrant).

Furthermore, the Utah Supreme Court has stated that "[t]he adequacy of a description in a search warrant depends in every instance upon the particular facts of the case." *Anderson,* 701 P.2d at 1102; *see also McIntire,* 768 P.2d at 972. In noting that the affiant in *Anderson* had executed the warrant, the supreme court emphasized the importance of the actual circumstances surrounding the search, rather than hypothetical possibilities. 701 P.2d at 1102–03; *see also State v. Bohan,* 72 Wash.App. 335, 864 P.2d 26, 28 (1993) (stating that proper test is, "given the *actual* facts of a given case, can the officer who actually executes the warrant by reasonable effort find and determine" proper subject of search "without having to resort to guess work"), *rev. denied,* 124 Wash.2d 1002, 877 P.2d 1287 (1994).

In conclusion, the police established probable cause to search defendants' home, where the evidence was seized, and the affidavit, bearing the signature of the judge, clearly identified their home as a proper subject of the search. Therefore, under Utah law, the search executed was valid. The trial court properly denied defendants' motion to suppress the marijuana and drug paraphernalia found in their home because the evidence was not seized in an illegal search and seizure.

## II. Sentencing Provision

■ Defendants contend that Utah Code Ann. § 58–37–8(5)(a)(ix) (Supp.1993), which provides a heightened sentence for certain drug-related crimes committed within 1000 feet of a church, acts as an element of their offenses. Defendants further argue that the State failed to present evidence regarding this element at trial. The State responds that this provision constitutes a sentencing

enhancement, not an element of the offense that the State must prove at trial.

This court has recently held that the provisions of section 58–37–8(5) constitute an additional element for the underlying offenses, to be determined by the trier of fact at trial. *State v. Powasnik,* 918 P.2d 146, 150 (Utah App.1996); *see also State v. Stromberg,* 783 P.2d 54, 60 (Utah App.1989) (identifying 1000–feet provision as an "additional element" of crime), *cert. denied,* 795 P.2d 1138 (Utah 1990). Therefore, the State had the burden to prove beyond a reasonable doubt the distance element under section 58–37–8(5)(a)(ix). At trial, the State failed to offer evidence regarding the distance between defendants' home and the Logan Temple. Accordingly, defendants' sentences under this provision should be reversed and the matter remanded to the trial court for resentencing.

## CONCLUSION

We reverse defendants' convictions for possession of a controlled substance within 1000 feet of a church; affirm the convictions for possession of drug paraphernalia; enter judgments of conviction for possession of a controlled substance;[4] and remand the case to the trial court to impose sentences for the controlled substance convictions.

DAVIS, P.J., and BENCH, J., concur.

---

**4.** Under *State v. Dunn,* 850 P.2d 1201, 1211 (Utah 1993), appellate courts "may enter judgment on a lesser included offense when an error has tainted the conviction for the greater offense."